IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**ALABAMA DYNAMICS, INC.,**

 Plaintiff,

v.                                                                                    CV-12-BE-1929-S

**McDANIEL MACHINERY, INC.,
SHARP INDUSTRIES, INC., and
YONG JU PRECISION
TECHNOLOGY CO., LTD., et al.,**

 Defendants.
_____
**SHARP INDUSTRIES, INC.,**

 Cross-Claimant & Cross-Claim
 Defendant,

v.

**McDANIEL MACHINERY, INC.,**

 Cross-Claim Defendant & Cross-
 Claimant.

_____
**SHARP INDUSTRIES, INC.,**

 Third-Party Plaintiff,

v.

**NATIONAL DRAYAGE SERVICES,
LLC, AND PORT ALLIANCE
LOGISTICS INTERNATIONAL, LLC,**

 Third-Party Defendants.

## **MEMORANDUM OPINION**

This case presents complex procedural and jurisdictional issues but arises from a relatively straightforward business transaction. Alabama Dynamics contracted for the purchase of a piece of machinery from Sharp who arranged with Port Alliance to ship the machinery from Taiwan to Calera, Alabama. Had all gone well, this commonplace international commercial enterprise would have resulted in the delivery of the machinery to Alabama Dynamics.  The machinery, however, arrived damaged, and now seven businesses are involved in a complex litigation across two different court systems.

This specific matter comes before the court on the "Motion to Dismiss of Third-party Defendant National Drayage" (doc. 4), the "Motion of Third-party Defendant National Drayage to Dismiss the First Amended Third-party Complaint" (doc. 22), "Port Alliance Logistics International, Inc.'s Motion to Dismiss" (doc. 9), and "Port Alliance Logistics International, Inc.'s Renewed Motion to Dismiss in Response to Sharp's First Third-party Amended Complaint" (doc. 24).

Sharp filed a three-count Third-party Complaint in state court prior to the removal of this case to federal court (doc. 1-9), and then filed a two count First Amended Third-party Complaint in this court (doc. 15).  All of Sharp's claims against the Third-party Defendants center around the transport of a large piece of machinery from Taiwan to Calera, Alabama, and an alleged accident causing damage to the machinery while in transit.  Sharp has responded to each of the Third-party Defendants' Motions to Dismiss (docs. 17 and 25) and filed a Consolidated Response to all four Motions to Dismiss (doc. 36). Port Alliance and National Drayage have replied to each of Sharp's responses, including the Consolidated Response. (Docs. 21, 27, 37, and 38).

Both National Drayage and Port Alliance argue that Sharp's state law claims should be dismissed as completely preempted by Sharp's claims under the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995, codified at 49 U.S.C. § 14706, *et seq.* and the Carriage of Goods by Sea Act of 1936, codified at 46 U.S.C. § 30701, *et seq.* ("COGSA") and that Sharp has not sufficiently pled its Carmack Amendment and COGSA claims. Port Alliance argues that this court lacks personal jurisdiction over it. After a recitation of the facts, this opinion addresses the three separate and distinct issues in turn: (1) the complete preemption of Sharp's state law claims, (2) the court's personal jurisdiction over Port Alliance, and (3) Sharp's failure to state a claim under Rule 12(b)(6).

I.   STATEMENT OF FACTS

    A.   Factual History

On May 7, 2010, Alabama Dynamics, the plaintiff in the original underlying state court action, ordered a High Precision Moving Double Column Vertical Machining Center worth $850,000 from Sharp, the third-party defendant. On February 21, 2011, Sharp hired Port Alliance to transport the machinery at issue in this case from Taiwan to Alabama Dynamics in Calera, Alabama. In March 2011, Port Alliance hired National Drayage, a Tennessee corporation, to transport the machinery from the port in Savannah, Georgia, to Alabama Dynamics in Calera, Alabama. Port Alliance never had any contact with Alabama Dynamics or McDaniel Machinery, the original plaintiff and a defendant in the underlying case that this court severed and remanded to the Circuit Court of Shelby County, Alabama.

National Drayage transported the machinery on Georgia and Alabama roads to an Alabama entity, Alabama Dynamics, that is located in Calera, Alabama. While National Drayage

was transporting the machine from Savannah, the vehicle carrying portions of the machine struck a bridge overpass causing direct impact and substantial damage to the machinery. Sharp contends that it cannot yet discern exactly where the accident took place, in Georgia or Alabama, because the parties have not yet engaged in any discovery. National Drayage delivered the damaged machinery to Alabama Dynamics, an Alabama corporation, in Calera, in March of 2011. The delivery of the damaged machinery in Calera led to the underlying suit that this court remanded to state court.

Sharp, through its affiliated Taiwanese entity, CTT Company, Ltd., contracted with Port Alliance, through Port Alliance's Taiwanese agent, Yipeng Logistics, Co., Ltd., for the transport of the machinery from Taiwan to Calera. The contract entered into between Sharp through CTT and Port Alliance through Yipeng refers only to the Taiwanese companies and not to Sharp or Port Alliance by name; Port Alliance and Sharp never directly contracted with each other. Sharp alleges, however, that it relied on Port Alliance "to undertake all arrangements related to the physical transport of the machine from Taiwan to Calera . . .." (Doc. 25, at 11). Sharp contends that at this early stage in the litigation when the parties have not engaged in any discovery, it cannot determine whether Port Alliance was acting as the carrier's receiving agent for the shipment in Savannah or whether Port Alliance or any of its employees physically entered Alabama in connection with the shipment at issue.

Port Alliance is a New Jersey corporation that also maintains a place of business in Los Angeles, California; Port Alliance is not registered to do business in Alabama; does not maintain bank accounts in Alabama; does not pay Alabama taxes; does not maintain an office or own property in Alabama; and does not have any employees in Alabama. Port Alliance has arranged

for tens of thousands of shipments over a number of years, and twenty-five of those shipments have been to Alabama. Since 2010, the only shipment to Alabama that Port Alliance arranged involves the machinery at issue in this case. Sharp is a foreign corporation with its principal place of business in Torrance, California.

### 2. Procedural History

While this case was still in the Circuit Court of Shelby County, Alabama, Sharp, as Third-party Plaintiff, filed a three-count Third-party Complaint against Port Alliance and National Drayage alleging negligence and breach of contract. The Third-party Defendants then removed the case to this court on May 21, 2012.  The court ordered the parties to show cause why the court should not sever the Third-party Complaint from the underlying original complaint and remand the underlying case to state court. (Doc. 8).  Sharp then filed its First Amended Third-party Complaint pleading two additional counts in the alternative to its three original counts:  claims under the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995, codified at 49 U.S.C. § 14706, *et seq.* and the Carriage of Goods by Sea Act of 1936, codified at 46 U.S.C. § 30701, *et seq.* ("COGSA").

The plaintiff in the underlying case, Alabama Dynamics, then filed a Motion to Remand (doc. 11), and the court heard arguments on the motion at a hearing on September 13, 2012. The court severed the Plaintiff Alabama Dynamics' original state law claims against the Defendants and remanded them to the Circuit Court of Shelby County, Alabama. The only claims remaining before the court are Sharp's Third-party claims against National Drayage and Port Alliance.

## II.    COMPLETE PREEMPTION

Port Alliance and National Drayage both argue that Counts I, II, and III of Sharp's Third-

party Complaint are completely preempted by Counts IV and V of Sharp's First Amended Third-party Complaint. Count I alleges negligence against National Drayage; Count II alleges negligence against Port Alliance; and Count III alleges breach of contract against Port Alliance. In Counts IV and V, Sharp alleges claims under the Carmack Amendment and COGSA in the alternative against Port Alliance and National Drayage.

No Eleventh Circuit precedent specifically addresses whether the Carmack Amendment is completely preemptive for purposes of federal question jurisdiction, and the district court judges within the Eleventh Circuit addressing the issue disagree about complete preemption. Thankfully, the court does not have to resolve this question because Sharp agrees with Port Alliance and National Drayage that its state law claims are completely preempted by either the Carmack Amendment or COGSA, and the question of whether Sharp sufficiently pled counts I, II, and III is moot. (Doc. 25, at 6-8 and Doc. 19, at 7). Thus, the court will DISMISS WITH PREJUDICE counts I, II, and III of Sharp's Third-party Complaint, as incorporated in its First Amended Third-party Complaint.

III. PERSONAL JURISDICTION

A. Standard of Review

A Rule 12(b)(2) motion attacks the court's jurisdiction over the defendant's person. In determining whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant [but] 'need only

make a prima facie showing.'" *S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)). The court must accept the allegations in the complaint as true. *Id.* "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

    B.    Legal Analysis

In determining whether the court has personal jurisdiction over a non-resident, the court must analyze jurisdiction under Alabama's long arm statute and then under the Due Process clause of the Fourteenth Amendment to the United States Constitution. *Madra v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "Only if both prongs of the analysis are satisfied may a federal . . . court exercise personal jurisdiction over a non-resident defendant." *Id.*

Alabama's long arm statute allows "the exercise of personal jurisdiction to the fullest extent constitutionally possible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). Thus, the court must only ask whether the non-resident defendant has sufficient "minimum contacts" with the forum state so as to comport with the Due Process Clause of the Constitution. *Madra*, 916 F.2d at 1514. For this court to have general jurisdiction over Port Alliance, its business contacts with Alabama must be "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-416 (1984).

7

In this case, Port Alliance has had very few contacts with the state of Alabama at all, and has had none besides the shipment at issue in the last two years. The court cannot construe this very limited relationship with Alabama to be evidence of continuous and systematic contacts so as to justify general jurisdiction over Port Alliance.

For the court to have specific personal jurisdiction, Port Alliance must have adequate minimum contacts with the state of Alabama, and the court's assertion of jurisdiction must comport with "traditional notions of fair play and justice." *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 854 (11th Cir. 1988). Port Alliance argues that because it has no physical presence in Alabama and because it does not transact business in Alabama, the court cannot exercise jurisdiction over it. Sharp, however, contends that Port Alliance has purposefully established sufficient minimum contacts with the state of Alabama to justify the court's jurisdiction over it.

When the defendant's contacts with the forum state are "limited and isolated, the state may exercise 'specific jurisdiction' over the defendant in any suit arising out of or related to those contacts. . ." *Pepsi-Cola Bottling Co. of Ft. Lauderdale-Palm Beach, Inc. v. Buffalo Rock Co.*, 593 F. Supp. 1559, 1562 n. 4 (N.D. Ala. 1984). Port Alliance's contacts with Alabama must be such that it would "reasonably anticipate being haled into court there." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The "unilateral activity of another party or third person" cannot form the basis of the court's jurisdiction over the defendant. *Helicoprteros*, 466 U.S. at 417. Sharp must illustrate that Port Alliance has "purposefully avail[ed] itself of the privilege of conducting activities within [Alabama], thus invoking the benefits and protections of its laws." *See Hanson*

*v. Denckla*, 357 U.S. 235, 253 (1958).

Port Alliance argues that the court does not have jurisdiction over it under *Shao v. Sea Horse Container Lines*, 72 F.3d 128 (Table), 1995 WL 729521 (4th Cir. 1995). In *Shao*, the non-resident defendants were in the business of "securing the release from the United States Customs Service of goods shipped to the United States and turning those goods over to inland carriers for transport." *Id.* at *2. The non-resident defendants in that case, Western and Sea Horse, secured goods and arranged for their inland transport from the port in Baltimore. The Fourth Circuit affirmed the Maryland District Court's ruling that the court did not have personal jurisdiction over both of the defendants, explaining:

> Neither Western nor Sea Horse advertises its services in Maryland. Nor does either company maintain offices in Maryland, have employees in Maryland, or transact business in Maryland. Occasionally, Western and Sea horse arrange for a carrier to transport goods to Maryland. But neither company delivers those goods to Maryland, nor does either company hire carriers in Maryland. In the subject case, Western merely effected the release of Shao's belongings to Customs. The role of Sea Horse was to hire a trucking company to transport the goods to Baltimore.

*Id.*

This situation almost exactly mirrors that of Port Alliance. In this case, Sharp hired Port Alliance to secure the transport of the machinery from Taiwan to Calera, Alabama. Even though the final destination for the goods was in Alabama, Port Alliance's servicing of the transport to Alabama was the only contact Port Alliance had with the state. Port Alliance did not advertise its services in Alabama; an Alabama company did not hire Port Alliance; and Port Alliance did not hire an Alabama trucking company for the inland transport. The Fourth Circuit's reasoning in *Shao* persuades the court that Port Alliance's isolated and attenuated contact with Alabama is not sufficient to

support a finding of personal jurisdiction.

The court agrees with Sharp that "a single shipment of goods into the forum state may *sometimes* establish a jurisdictional basis."(Doc. 12, at 15 (quoting *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1129 (4th Cir. 1986)) (emphasis added)). However, Port Alliance's plans to secure a single shipment in this case do not rise to the level of "purposeful availment." Sharp cites *Pepsi-Cola Bottling Co.* for the proposition that a single shipment of goods within Alabama justifies the court's personal jurisdiction over a non-resident. 593 F. Supp. at 1559.

In *Pepsi-Bottling Co.*, Desnoes & Geddes, one of the defendants, conspired with Buffalo Rock, an Alabama company, to violate the territorial restrictions of agreements they had with Pepsi and harmed the plaintiff in the process. *Id.* at 1561. Desnoes & Geddes, a non-resident, claimed that the Northern District of Alabama did not have personal jurisdiction over it because it had no contacts with the state of Alabama other than those giving rise to the litigation. *Id.*  The court ruled that it had jurisdiction over Desnoes & Geddes because it had "issued purchase orders to an Alabama bottler for over 230,000 cases of Pepsi-Cola, *knowing* that the product would be processed and produced in Alabama." *Id.* at 1562 (emphasis added). Also, as Port Alliance pointed out in its Reply Brief, Desnoes & Geddes "mailed purchase orders to the forum state, negotiated and modified terms of the purchase orders in the forum state, directed another resident entity to deliver cases to third-parties within the forum state, and authorized individual agents to enter the forum state and negotiate the final terms of the transaction in the forum state on [its] behalf." (Doc. 27, at 9 (citing *Pepsi-Cola Bottling Co.,* 593 F. Supp.

at 1563-65)).

The *Pepsi-Bottling Co.* case is distinguishable from the current case: Port Alliance took no "affirmative and deliberate action" to "ensure that all significant aspects of the performance of its. . . contract would occur in Alabama." *See Pepsi-Bottling Co.,* 593 F. Supp. at 1562. Port Alliance did not actually deliver the machinery in Alabama; it merely arranged for National Drayage to deliver the machinery to Alabama Dynamics in Calera, Alabama. Port Alliance was not engaged in "purposeful, knowing, and deliberate" contacts with the state of Alabama like Desnoes & Geddes was when it purposefully conspired with an Alabama corporation to process and produce over two hundred thousand bottles of Pepsi in the state of Alabama. *See id.* at 1561.

The juxtaposition of *Shao* and *Pepsi-Bottling Co.* illustrates the difference between a situation like the one at hand where a non-resident defendant does not have the sufficient contacts to justify the court's jurisdiction over it and one in which the non-resident's defendant's purposeful contacts with the forum state are such that it "could have reasonably anticipated being haled into court there should [its] forum-related activities result in litigation." *Id*. at 1562. The court finds that Port Alliance's contacts with Alabama are not sufficient to support a finding of either general or specific personal jurisdiction over it. Thus, the court will GRANT Port Alliance's Motion to Dismiss for lack of jurisdiction and DISMISS WITHOUT PREJUDICE all of Sharp's claims against Port Alliance.

IV.    FAILURE TO STATE A CLAIM

National Drayage claims that Sharp fails to state viable claims under the Carmack

Amendment or COGSA.

A.     Standard of Review

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

  B. Legal Analysis

    1. Carmack Amendment Claim

To bring a prima facie case under the Carmack Amendment to the Interstate

Commerce Act, the plaintiff must prove that the goods "1) were delivered to the carrier in good condition, 2) arrived in damaged condition, 3) resulted in the specified amount of damage." *Fuente Cigar, Ltd. v. Roadway Express, Inc.*, 961 F.2d 1558, 1560 (11th Cir. 1992).

In its First Amended Complaint, Sharp does not specifically allege that the machinery at issue was delivered to National Drayage in good condition, but it does allege that "[National] Drayage caused an accident in which the vehicle carrying portions of the machine struck a bridge overpass causing direct impact to the machinery resulting in substantial damage to the machinery and its many component parts." (Doc. 1-9, at 3). The *Twombly* pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element. It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the element] plausible." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (internal quotations and citations omitted).

The court considers Sharp's allegation of the bridge strike evidence sufficient to suggest that the machinery was delivered to National Drayage in good condition and was only damaged once National Drayage was transporting the machinery from Savannah to Calera and allegedly struck the bridge overpass. The court is satisfied that Sharp's allegations about National Drayage causing damage to the machinery while in transit sufficiently plead enough facts to reasonably suggest that the first two elements of Sharp's Carmack Amendment claim are plausible at the Motion to Dismiss stage.

For the third element of its Carmack Amendment claim, Sharp must allege that

the damage to the machinery resulted in a specified amount of damages. Sharp alleges that it has "sustained money damages, including, but not limited to, costs associated with repairing the machine (including transporting technicians from Taiwan to Calera, Alabama) and reassembling the machine at the premises of Alabama Dynamics, Inc., loss of income, all in a sum not less than $650,000." (Doc. 15, at 3).

The Eleventh Circuit has described a sufficient pleading as "a complaint with enough factual matter (taken as true) to suggest the required element." *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Sharp's complaint alleges specific costs that were associated with the damage National Drayage allegedly caused to the machine, including repair and reassembly costs and loss of income and future income. Looking at Sharp's complaint, the court finds sufficient allegations of fact to support a claim for damages and meet the pleading requirements of a prima facie case under the Carmack Amendment.

      2.     COGSA Claim

COGSA governs "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000). "Only carriers who issue bills of lading for the carriage of goods to or from the United States are entitled to protection under COGSA. COGSA defines the term 'carrier' as 'the owner of the charterer who enters into a contract of carriage with a shipper.'" *El Jordan v. Solymar, S. De R.L.*, 315 F. Supp. 2d 1355, 1363 (S.D. Fla. 2004) (quoting 46 App. U.S.C. § 1301(a)). To establish a prima facie case of liability against a carrier under COGSA, "a shipper must show that the

carrier received the cargo in good condition but unloaded it in damaged condition at its destination." *Id.* (citing *Polo Ralph Lauren*, 215 F.3d at 1220).  A Bill of Lading is prima facie evidence of "the receipt by the carrier of the goods as therein described." *Plastique Tags, Inc. v. Asia Trans Line, Inc.*, 83 F.3d 1367, 1369 (11th Cir. 1996).

Here, a "Straight Bill of Lading" exists that lists National Drayage as the carrier and Alabama Dynamics as the Consignee, dated March 28, 2011. ("Straight Bill of Lading," Doc. 22-1, at 3- 4).  Sharp did not specifically mention a bill of lading in its Amended Complaint, but National Drayage attached it as an exhibit to its motion to dismiss Sharp's First Amended Third-party Complaint. ("Straight Bill of Lading," Doc. 22-1, at 4).

"[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1343 n. 3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."). Here, National Drayage does not dispute the authenticity of the bill of lading and actually provided the document to the court as part of its argument that Sharp cannot avoid the consideration of pertinent documents by failing to reference them in the complaint. (Doc. 22, at 3-4 ). Sharp also acknowledges the authenticity of the document by referencing it in its Consolidated Response to the Third-party defendants'

16

motions to dismiss. (Doc. 36, at 16). The court will consider the bill of lading in its consideration of National Drayage's motion to dismiss because it is central to Sharp's claim and undisputed by the parties. *See Day*, 400 F.3d at 1276.

A handwritten note on the "Straight Bill of Lading" says, "Subject To Damage Inspection" and is signed and dated "3/28/11." *Id.* Sharp alleges that this Bill of Lading is the document governing National Drayage's transport of the machine at issue to Calera even though Sharp is not specifically listed on the document. (Doc. 36, at 13). This bill of lading could reasonably be interpreted as prima facie evidence of the receipt of the machinery by National Drayage because of the named parties and the listed date that coincides with the delivery of the machinery to Alabama Dynamics in late March, 2011. Because this Bill of Lading could be prima facie evidence of the receipt of the machinery by National Drayage in good condition and because the parties do not dispute that the machinery arrived damaged in Calera, Sharp has alleged a viable claim under COGSA.

At this very early stage of the litigation and before discovery has even commenced, Sharp has sufficiently pled claims under both the Carmack Amendment and COGSA. Thus, the court will DENY National Drayage's Motion to Dismiss Counts IV and V of Sharp's First Amended Complaint.

## IV.     CONCLUSION

Because National Drayage, Port Alliance, and Sharp all agree that Sharp's state law claims should be dismissed as completely preempted by Sharp's claim under the Carmack Amendment, the court will DISMISS Counts I, II, and II of Sharp's First Amended Complaint.  Because Port Alliance does not have sufficient minimum contacts

with the state of Alabama to justify this court's exercise of personal jurisdiction, the court will dismiss all of Sharp's claims against Port Alliance. Finally, because Sharp has adequately pled claims under the Carmack Amendment and COGSA, the court will deny National Drayage's motion to dismiss for failure to state a claim under Rule 12(b)(6). The court will simultaneously enter an order to that effect.

    DONE and ORDERED this 9th day of November, 2012.

                                                      KARON OWEN BOWDRE
                                                     UNITED STATES DISTRICT JUDGE